UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | | |
|---|---|---|
| CHARLES R. BLAYLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18-CV-00299-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STEEL, PAPER, AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED, INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, et al. | ) ) ) ) ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Defendants, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, and Local 899 of the Union (collectively "USW") have filed a Motion for Summary Judgment [Doc. 36], supporting memorandum [Doc. 37], exhibits [Doc. 38], and a Statement of Undisputed Material Facts [Doc. 39], pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant, Resolute FP US Inc. has filed a Motion for Summary Judgment [Doc. 33], supporting memorandum, affidavit in support [Doc. 34], and a statement of material facts [Doc. 35], pursuant to Rule 56 of the Federal Rules of Procedure.

Plaintiff, Charles R. Blaylock, ("Blaylock") did not initially respond to either motion. The Court entered a show cause order [Doc. 41] directing Blaylock to show cause why he had not responded, noting that if he did not file a response, then all facts as provided by Defendants would be considered undisputed for purposes of ruling on their motion. Blaylock did not respond to the Court's show cause Order. This motion is now ripe for resolution.

1

## I. Procedural and Factual Background

Blaylock was an employee of Resolute, beginning on January 16, 2017 [Doc. 1, ¶ 7]. He was a member of USW while employed by Resolute [*Id.*]. On March 3, 2018, Blaylock exposed his buttocks to a co-worker, who promptly reported him [*Id.* at ¶ 8; Doc. 35 ¶ 2; Doc. 39, ¶ 4]. On March 5, 2018, Blaylock met with his supervisor, Jeff Elrod, a human resources representative, Greg Davis, and USW's Vice President, Jerry Haney. [Doc. 1, ¶ 9; Doc. 39, ¶ 5]. At this meeting, Blaylock admitted to exposing himself to the co-worker and acknowledged that Resolute did not tolerate that kind of conduct [Doc. 38-5, ¶ 4; Doc. 38-7, ¶¶ 4-6, pg. 9]. Resolute terminated Blaylock that day, explaining to him that that he had violated the Labor Agreement and Resolute's Standard of Conduct and that it had a "zero tolerance policy in regards to any such behavior." [Doc. 38-6, pg. 2]. The termination letter also indicated that employees reported that Blaylock neglected his duties when he was not supervised [*Id.*].

After the meeting, Mr. Haney spoke with other employees who confirmed that Blaylock exposed himself at work and that he neglected his duties while not supervised [Doc. 38-5, ¶ 6]. USW filed a grievance on Blaylock's behalf [*Id.* at ¶ 7; 38-7, ¶4]. As the grievance involved a termination, it proceeded directly to the "third step" of the process, which was a meeting with Resolute [Doc. 38-6, ¶ 7; 38-7, ¶ 3]. At this point, in addition to Mr. Haney, USW brought in Michael Healan, a staff representative for USW, to assist with Blaylock's grievance [Doc. 38-7, ¶ 3]. As the staff representative, Mr. Healan had the power to determine whether to appeal the grievance to arbitration or instead close the grievance after the initial decision by the employer [*Id.*]. In preparation, Mr. Healan spoke to Mr. Haney and USW's President Rodney Burris about Blaylock, reviewed Blaylock's work history and the notes from the March 5th meeting, and met

2

with Blaylock to discuss the incident [*Id.* at ¶¶ 4-6]. Blaylock again admitted to the conduct which resulted in his termination [*Id.* at ¶ 6].

The third step meeting to discuss Blaylock's grievance was held on March 21, 2018 [Doc. 39, ¶ 18].[1] At the meeting, Mr. Healan questioned the zero-tolerance policy and its application to Blaylock's conduct, as well as why Blaylock's work performance had not been questioned until now [Doc. 38-7, ¶ 8]. Resolute stated that it had only learned of Blaylock's work performance deficiencies during its investigation into the allegation that Blaylock had exposed himself to a co-worker [*Id.*]. Mr. Healan asked that Blaylock be reinstated. Blaylock then spoke on his own behalf, where he changed his story. He now claimed that he did not mean to expose himself to the other employee and that the exposure was "accidental." [*Id.* at ¶ 9; Doc. 38-3, 48:6-11]. Resolute denied the grievance and advised Mr. Healan in writing on April 2, 2018. Resolute advised in its letter that Blaylock had changed his story regarding the incident and had failed to take responsibility for his actions [Doc. 38-7, ¶ 10, pg. 14].

After the grievance was denied, Mr. Healan requested Mr. Haney and Mr. Burris interview any witnesses to the incident as well as Blaylock's general misconduct [*Id.* at ¶¶ 11-12]. The interviews reinforced the information already presented by Resolute [*Id.*]. Mr. Healan determined that Blaylock's "grievance lacked sufficient merit and that Union would not prevail at arbitration." [*Id.* at ¶ 13]. Specifically, he believed that Blaylock understood Resolute's zero-tolerance policy, which would include the prohibition of exposing oneself to co-workers [*Id.* at ¶ 14]. He further stated that he believed the change in Blaylock's story hurt his credibility and "undermined any chance of having him reinstated either by the Company or an arbitrator." [*Id.* at ¶ 14]. On June 8,

---

[1] Plaintiff's complaint indicates this meeting occurred on or about April 20, 2018, however, all evidence provided by Defendants indicate that the actual date was March 21, 2018.

2018 Mr. Healan informed Blaylock of the decision not to arbitrate the grievance [*Id.* at ¶ 16, pg. 16].

Blaylock filed this Complaint on December 7, 2018 [Doc. 1]. He states that Resolute violated the labor agreement by terminating his employment without cause and that USW breached the duty of fair representation by refusing to pursue arbitration [*Id.* at ¶¶ 21-22]. Blaylock seeks compensatory damages, including back pay and benefits, and attorney's fees [*Id.* at pg. 4].

## II.     Standard of Review

Under Fed.R.Civ.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ultimately, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The burden of proving that no genuine dispute of fact exists is strictly upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). As such, the court must consider the evidence and "draw all reasonable inferences in favor of the nonmoving party." *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253, F.3d 900, 907 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

However, once the moving party has presented sufficient evidence to support summary judgment, the nonmoving party "must point to evidence in the record upon which a reasonable finder of fact could find in its favor." *Machoka v. City of Collegedale*, No. 1:17-CR-203-TAV-CHS, 2019 WL 1768861, at *3 (E.D. Tenn. Apr. 22, 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party "may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial."

4

*Anderson*, 477 U.S. at 256. Specifically, the alleged factual dispute must be material. *Anderson*, 477 U.S. at 248.

**III.    Analysis**

An employee may bring a suit against his employer for breach of a collective bargaining agreement under § 301. *Smith v. Evening News Assn.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). While this typically requires the employee to exhaust any grievance or arbitration remedies as provided in the agreement, an employee may bring suit against the employer and the union if the union "acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (citing *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). In that case, the suit becomes a hybrid § 301 case: "[t]o prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DeCostello*, 462 U.S. at 165 (quoting *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66-67, 101 S.Ct. 1559, 1565-66, 67 L.Ed.2d 732 (1981)).

Here, Defendants argue that Blaylock fails to meet both requirements for a hybrid suit under § 301 of the Labor Management Relations Act, amended as 29 U.S.C. § 185. Specifically, they argue that Blaylock does not show that either Resolute breached the collective bargaining agreement in terminating him or that USW violated their duty of fair representation by refusing to arbitrate his grievance. Therefore, they move for summary judgment and request Blaylock's claims be dismissed. While it is clear that Defendants may succeed on only one prong of the analysis, the Court shall address both Resolute and USW's conduct in turn.

5

### A. Resolute's Breach of the Collective Bargaining Agreement

Blaylock's Complaint states that "Resolute violated the Labor Agreement by terminating Plaintiff's employment without cause." [Doc. 1, ¶ 21]. Resolute argues that "it did not violate the collective bargaining agreement when it terminated plaintiff Blaylock and Blaylock admits this." [Doc. 33, pg. 2]. Specifically, Blaylock admitted, on multiple occasions, to "mooning" another employee, and he admitted that he knew such conduct could result in termination. *See* [Doc. 38-7, pg. 9].

USW sent Blaylock Requests for Admissions, which he failed to admit or deny according to Rule 36(a)(3) of the Federal Rules of Civil Procedure. *See* [Docs. 38-1, ¶ 2; 38-2]. Therefore, pursuant to Fed.R.Civ.P. 36(a)(3), the following requests are deemed admitted.[2]

1. That Blaylock accepted responsibility for "mooning" a co-worker while on duty during a meeting with Resolute management on March 5, 2018 [Doc. 38-2, Request 5].
2. That Blaylock admitted that he knew that action violated Resolute's work rules [*Id.*, Request 7].
3. That Blaylock knew that conduct could result in termination of employment [*Id.*, Request 8].
4. That Resolute has a "zero tolerance" policy prohibiting such conduct [*Id.*, Request 9].
5. That Blaylock neglected his work duties when not being supervised [*Id.*, Request 12].

Blaylock admits that he was aware of Resolute's Discipline Policy and Standards of Conduct [Doc. 38-3, Deposition of Plaintiff, 29:10-20]. He also stated that he was aware that there were "intolerable offenses" that would justify immediate termination [*Id.*, 29:25-30:21]. One of

---

[2] "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed.R.Civ.P. 36(a)(3).

these offenses included "Continued Inattention to Duties." [*Id.*, 30:22-31-22]. There is also an offense for "immoral conduct," including conduct that violates the sexual harassment policy [*Id.* 31:23-32:6].

The Collective Bargaining Agreement allows Resolute to terminate an employee upon a showing of just cause [Doc. 39, ¶ 35; Doc. 38-7, ¶ 3]. Blaylock's conduct gave Resolute ample just cause to terminate him. He exposed himself to a co-worker and neglected his duties, by his own admission. His conduct violated Resolute's Standards of Conduct and warranted his termination. Blaylock cannot prove that his termination violated the collective bargaining agreement, and therefore, there was no breach of the contract.

### B. USW's Duty of Fair Representation

Blaylock also contends that USW did not fairly represent him before Resolute and violated its duty to represent him by failing to pursue arbitration. USW argues that Blaylock has failed to show that its actions in failing to pursue arbitration breached its duty of fair representation. A union has a duty to fairly represent the employees in the collective bargaining unit, including "in its enforcement of the resulting collective bargaining agreement." *Vaca*, 386 U.S. at 177 (citing *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964)). "[T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177 (citing *Humphrey*, 375 U.S. at 342).

In this case, Blaylock states that USW "acted arbitrarily, discriminatorily and in bad faith in refusing to pursue arbitrations with Resolute for Plaintiff pursuant to the Labor Agreement." [Doc. 1, ¶ 20]. The Court must look to each element to determine if the union violated its duty of

7

fair representation. *See Merritt v. International Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010) (citing *Air Line Pilots Ass'n, Intern. V. O'Neill*, 499 U.S. 65, 77 111S.Ct.1127, 113 L.Ed.2d 51 (1991)). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *O'Neill*, 499 U.S. at 67 111S.Ct.1127) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)) (internal quotation marks and citations omitted). "A union acts in 'bad faith' when it acts with an improper intent, purpose, or motive…encompassing fraud, dishonesty, and other intentionally misleading conduct." *Merritt*, 613 F.3d at 619 (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998); *Baxter v. United Paperworkers Int'l Union, Local 7370*, 140 F.3d 745, 747 (8th Cir. 1998)) (internal quotation marks omitted). A union's duty as it relates to discriminatory conduct "carries with it the need to adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971)).

"In the context of employee grievances, [the Sixth Circuit has] held that the duty of fair representation requires a union to undertake a reasonable investigation to defend a member from employer discipline." *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. National Labor Relations Board*, 844 F.3d 590, 603 (6th Cir. 2016) (quoting *Driver v. U.S. Postal Service, Inc.*, 328 F.3d 863, 869 (6th Cir. 2003)) (internal quotation marks omitted). However, that "does not require a union to exhaust every theoretically available procedure simply on the demand of the union member." *St. Clair v. Local 515*, 442 F.2d 128, 130 (6th Cir. 1969) (citing *Vaca*, 386 U.S. at 194, 87 S.Ct. 903). "[O]rdinary mistakes, errors,

8

or flaws in judgment" during the investigation do not justify a finding of arbitrariness. *Garrison v. Cassens Transport Co.*, 3334 F.3d 528, 538 (6th Cir. 2003) (citing *Walk v. P\*I\*E\* Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992)).

Here, USW acted reasonably in handling Blaylock's grievance. USW challenged Resolute's decision to terminate Blaylock and investigated Blaylock's claim. *See generally* [Doc. 38-7]. Mr. Healan, the staff representative for USW assigned to Resolute's district, was brought in to process the grievance, in accordance with USW's policies. Mr. Healan spoke with the local USW officers, Mr. Haney and Mr. Burris, to discuss Blaylock's grievance. These witnesses confirmed that Blaylock admitted to "mooning" a co-worker. He further reviewed Blaylock's work history, personnel file, and Resolute's information surrounding the incident in which Blaylock exposed himself. This included notes from the meeting between Blaylock, his supervisor, a supervisor from human resources, and Mr. Haney. These notes also confirmed that Blaylock admitted to the improper conduct at that meeting. It also indicated that Blaylock stated he knew such conduct was a terminable offense. Finally, Mr. Healan met with Blaylock, when again, he admitted to his conduct. Mr. Healan attended the third step meeting and advocated on Blaylock's behalf, asking Resolute to reinstate him. Blaylock also spoke at this meeting and contradicted what he had previously acknowledged, that is, that he had exposed himself to a co-worker. Here he claimed that he did not "moon" his co-worker and that any exposure was accidental. Blaylock does not dispute that USW properly pursued his grievance at this stage.

Instead, Blaylock argues that USW then should have invoked the arbitration provision of the Collective Bargaining Agreement. Mr. Healan stated that as staff representative assigned to the case, it was his decision whether to appeal the grievance to arbitration or close the grievance [Doc. 38-7, ¶ 3]. Resolute denied Blaylock's grievance, citing Blaylock's change of story in their

9

decision. Mr. Healan interviewed Blaylock's co-workers regarding the incident as well as the complaint of Blaylock not completing his job responsibilities. The co-workers did not support Blaylock's change of story, saying that the incident was intentional. Mr. Healan believed that Blaylock's failure to take responsibility for his actions undermined his request for leniency for the incident. Therefore, considering the situation as a whole, Mr. Healan determined the grievance lacked sufficient merit and that USW would not prevail at arbitration.

USW's handling of this grievance was not "wholly irrational" or "extremely arbitrary". *See O'Neill*, 499 U.S. at 78, 111 S.Ct. 1127; *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir. 1994). Blaylock does not have "an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Vaca*, 386 U.S. at 191, 87 S.Ct. 903; *see also Driver*, 328 F.3d at 869 ("The duty of fair representation does not require that a union fully pursue every grievance filed."). USW sufficiently investigated Blaylock's grievance, advocated for Blaylock at the third step meeting, reviewed the facts afterwards, and did not commit obvious error in deciding not to pursue arbitration. *See Driver*, 328 F.3d at 869 ("a union's decision not to pursue a grievance, based on thorough investigation of the employee's complaint and a reasonable conclusion that the complaint does not merit further use of the grievance procedure, does not necessarily violate the union's duty of fair representation.").

Next, Blaylock has produced no evidence that USW acted "with an improper intent, purpose, or motive…encompassing fraud, dishonesty, and other intentionally misleading conduct." *Merritt*, 613 F.3d at 319. Mr. Healan stated that he had no personal disputes or animus toward Blaylock and that he processed and evaluated his grievance the same way he processed and evaluated any other grievance [Doc. 38-7, ¶ 13]. There is no evidence to suggest that Mr. Healan based his decision not to pursue arbitration on anything other than the merits of the case. *See Hands*

10

*v. DaimlerChrysler Corp.*, No. 3:04CV7077, 2005 WL 1828787, at *5 (N.D. Ohio July 29, 2005) (the union did not make a bad faith in determining that the plaintiff's "grievance lacked merit and could not be won at arbitration, and [choosing] not to pursue it further."). Therefore, Blaylock has not shown that USW acted in bad faith.

Finally, there is no indication that USW acted in a discriminatory way "that is intentional, severe, and unrelated to legitimate union objectives." *Lockridge*, 403 U.S. at 301, 91 S.Ct. 1909. As previously stated, Mr. Healan stated that he did not discriminate against Blaylock, and there is no evidence to the contrary. Therefore, Blaylock has not shown USW acted with discriminatory intent in deciding not to arbitrate his grievance.

## IV. Conclusion

Given the reasoning above, the Court finds that Blaylock has failed to show that Resolute breached the collective bargaining agreement by terminating him and that USW breached their duty of fair representation by choosing not to pursue arbitration of Blaylock's grievance. Defendants' Motions for Summary Judgment [Docs. 33, 36] are **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. Defendant Resolute's Motion to Postpone Pretrial and Trial Dates [Doc. 42] is **DENIED** as moot.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge